UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X
THE COALITION OF LANDLORDS,
HOMEOWNERS, AND MERCHANTS INC.,
and PAUL PALMIERI,

         *Plaintiffs*,

   - against –

SUFFOLK COUNTY, aka The COUNTY OF
SUFFOLK, GARY ZANELLI a/k/a RAYMOND
ZANELLI, individually and in his
capacity as a police officer,
RICCARDO MASCIO a/k/a RICK MASCIO,
individually and in his capacity as
a police officer and sergeant,
CHRISTOPHER INGWERSEN individually
and in his capacity as a police
officer and sergeant, of the Suffolk
County Police Department, JOHN/JANE
DOE 1-5 and any other unknown
agents, assigns and/or employees of
Suffolk County Police Department,
individually and in their capacity
of each as employees for the Suffolk
County Police Department, THE
SUFFOLK COUNTY POLICE DEPARTMENT,
STEVEN PALOUBIS, CHRISTOPHER
PALOUBIS, individually and in their
official capacities as officers of
S&A Neocronin Inc, Anthi New
Neocronin Inc and GERARD GLASS
individually and GERARD GLASS AND
ASSOCIATES, PC,

         *Defendants*.
-----------------------------------X

**MEMORANDUM & ORDER**

24-CV-3323 (KAM)(LGD)

**KIYO A. MATSUMOTO, United States District Judge:**

     On May 4, 2024, Plaintiffs The Coalition of Landlords,

Homeowners, and Merchants Inc. ("Coalition"), and Paul Palmieri

("Palmieri") brought this action against Defendants Steven Paloubis and Christopher Paloubis, (together, the "Paloubis Defendants"); Gerard Glass, Esq., and the law firm of Gerard Glass and Associates, P.C., (together, the "Glass Defendants;" and the Paloubis Defendants and Glass Defendants together are referred to herein as the "private actor Defendants" or "non-State Defendants"); Suffolk County Police Officers Raymond Zanelli, Rick Mascio, and Christopher Ingwersen (the "Police Officer Defendants"); and Suffolk County along with the Suffolk County Police Department.  The Complaint alleged Constitutional claims, namely violations of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, as well as state law tort claims of false imprisonment, trespass, and conversion, against the Defendants. (ECF No. 1, Complaint ("Compl.").)

On July 29, 2024, the Court Ordered Plaintiffs to Show Cause why:

> (1) Plaintiffs' claims against: (1) Steven Paloubis; (2) Christopher Paloubis; (3) Gerard Glass; and (4) Gerard Glass and Associates, PC; should not be dismissed for lack of subject matter jurisdiction. Plaintiffs are both New York citizens for purposes of diversity jurisdiction, as are the four aforementioned defendants therefore, diversity subject matter jurisdiction is not present. See 28 U.S.C. § 1332(a). It is not clear to the Court what other basis for jurisdiction exists regarding the private actors named in the complaint. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (explaining the limited set of circumstances under which a private entity can be shown to be acting in concert with a state actor).

and:

> (2) the Suffolk County Police Department and Suffolk County should not be dismissed as defendants, given "[i]t is well settled that an entity such as the Suffolk County Police Department is an 'administrative arm' of the same municipal entity as Suffolk County and thus lacks the capacity to be sued" and "[m]unicipal governments, like Suffolk County, may be sued only for unconstitutional or illegal policies, not for the illegal acts of their employees." *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) (citations omitted).

(Docket Order dated July 29, 2024).  Plaintiffs submitted a letter response to the Court's Order to Show Cause on August 23, 2024, and also attached a proposed amended complaint and moved for leave to amend.  (ECF No. 23, Response to Order to Show Cause ("Pl. Resp."); ECF No. 24, Proposed Amended Complaint Redline ("Proposed Amended Compl.").)

Subsequently, on September 6, 2024, the Court held a combined show cause hearing and pre-motion conference (regarding Defendants' anticipated motions to dismiss) to discuss Plaintiffs' responses to the pre-motion letters and the Order to Show Cause. (*See* Minute Entry dated September 6, 2024.)  At the conference, Plaintiffs' counsel conceded that the claims set forth in the original Complaint were not viable, and that there were no remaining claims over which this Court had jurisdiction. Furthermore, Plaintiffs' counsel did not offer any additional factual allegations outside of those set forth in the Complaint or Proposed Amended Complaint that would justify further leave to

amend.  Accordingly, for the reasons stated on the record at the conference, as well as the reasons set forth below, the Court dismisses Plaintiffs' claims (1) against Steven Paloubis, Christopher Paloubis, Gerard Glass, and Gerard Glass and Associates, PC, for failure to state a claim and lack of subject matter jurisdiction; (2) against Suffolk County and the Suffolk County Police Department for failure to state a claim; and (3) against Officers Gary Zanelli, Riccardo Mascio, and Christopher Ingwersen for failure to state a claim.  Plaintiffs' motion for leave to amend is further denied as futile as the amended complaint submitted would not correct the infirmities discussed and conceded by Plaintiffs' counsel on the record at the conference, or as described below.

## BACKGROUND

### I.  Factual Background

Plaintiffs' complaint arises out of an alleged self-help eviction of Plaintiff Coalition conducted by the Paloubis Defendants in May of 2021.  (*See generally* Compl.)  Plaintiff Coalition is a New York corporation with a principal office in Suffolk County, New York.  (*Id.* ¶ 1.)  Plaintiff Paul Palmieri is a New York resident.  (*Id.* ¶ 2.)  Defendants Raymond Zanelli, Rick Mascio, and Christopher Ingwersen are police officers with the Suffolk County Police Department.  (*Id.* ¶¶ 3-5.)  The Paloubis Defendants, previously Plaintiff Coalition's landlord, are both

4

New York residents.  (*Id.* ¶¶ 7-8.)  Defendant Gerard Glass, Esq., is a New York resident, and Gerard Glass and Associates, PC does business in Suffolk County, and according to the Division of Corporations[1], is a New York professional service corporation. (*Id.* ¶¶ 11-12); *see also* Division of Corporations Entity Information, https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Sep. 6, 2024).

Plaintiffs had previously leased a space in an office building at 28 East Main Street in Babylon, N.Y. since about 2001, and their landlord was Defendant Steven Paloubis, who was assisted by his son Christopher Paloubis.  (Compl. ¶¶ 37, 40.)  In the two years before the May 2021 eviction of Plaintiffs, Plaintiffs made complaints to the Suffolk County Police Department regarding Steven Paloubis's attempts to forcibly evict Plaintiffs by turning off utilities, flooding the space, and other acts.  (*Id.* ¶ 38.) On May 5, 2021, Palmieri received a phone call from his secretary who informed him that there were people in the Coalition's office removing items from the office.  (*Id.* ¶¶ 44-45.)  Palmieri instructed his secretary to call the police, and Palmieri arrived at the office, where he encountered Officer Zanelli.  (*Id.* ¶¶ 46-47.)

---

[1] The Court may take judicial notice of Division of Corporations records.  *See Haru Holding Corp. v. Haru Hana Sushi, Inc.,* No. 13-CV-7705 (RWS), 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016) (using public documents to take judicial notice of defendant's business status).

Palmieri asked Officer Zanelli to arrest the Paloubis Defendants "and the other people participating there for the illegal eviction." (*Id.* ¶ 48.) Although Plaintiff became aware of the eviction on May 5, 2021, he "later found out" that the eviction had "commenced on May 3, 2021." (*Id.*) Officer Zanelli stated that he had been at the property the day before, and Christopher Paloubis had informed Officer Zanelli that he had a warrant of eviction. (*Id.* ¶ 49.) Officer Zanelli stated to Palmieri that he had not entered the property. (*Id.*) Palmieri asked Officer Zanelli further questions, and Officer Zanelli stated that "this was a civil matter" and was not his concern. (*Id.* at ¶¶ 51-52.) Palmieri stated that he would like to enter the property to retrieve some items, but Officer Zanelli "would not allow [Palmieri] to enter the premises." (*Id.* ¶ 53.) Palmieri subsequently requested a supervisor's presence. (*Id.*)

Subsequently, Police Sergeant Mascio ("Sergeant Mascio") arrived at the scene, and provided the same explanation to Palmieri – because the eviction was a "civil issue and not a criminal issue" the police would not intervene. (*Id.* ¶ 54.) Palmieri argued to Sergeant Mascio that only the Sheriff could effectuate an eviction, not a landlord, and that he was currently "in [c]ourt" with his landlord regarding the matter, but "Sergeant Mascio did not change his opinion." (*Id.*) Palmieri also called Newsday and the State Police to no avail. (*Id.*)

6

Palmieri called the Sheriff's office, which confirmed that their office had not executed the warrant of eviction, but Sergeant Mascio and Officer Zanelli continued in their refusal to intervene. (*Id.* ¶ 57.)  Subsequently, at Palmieri's request, Officer Zanelli "escorted" him to the mailbox and observed as Palmieri opened the mailbox and removed his mail.  (*Id.* ¶ 58.)  Palmieri also asked for an envelope that was under the door to the office, and Christopher Paloubis handed the envelope to Officer Zanelli, who gave it to Palmieri.  (*Id.* ¶ 59.)  Sergeant Mascio subsequently told Palmieri that he was going to report the incident as "an illegal eviction taking place" but changed his position after speaking to Gerard Glass, Esq., the Paloubis Defendants' attorney who was "handling the landlord-tenant action in the district court."  (*Id.* ¶¶ 60-61.)  Palmieri argued extensively with the police officers to no avail.  (*Id.* ¶¶ 62-64.)

On May 6, 2021, Palmieri filed a police report related to the eviction and called the police precinct numerous times.  (*Id.* ¶¶ 65-67.)  Palmieri subsequently submitted documents related to the incident to Sergeant Ingwersen in the Crime Control section.  (*Id.* ¶¶ 68-69.)

Plaintiffs allege in the complaint that it was the Defendants' individual and collective, omission and commission of actions that caused the Plaintiffs to suffer false imprisonment, loss of liberty, illegal eviction, trespass, conversion, and other

violations of their rights. (*Id.* ¶¶ 77-131.) Plaintiffs also allege that the Defendant police officers acted according to the policies, practices and customs of the police department, which led to the violation of Plaintiffs' Constitutional rights. (*Id.*) Plaintiffs seek a jury trial, compensatory damages, punitive damages, and attorney's fees. (*Id.* p. 30.)

As discussed *supra*, Plaintiffs included a proposed amended complaint along with a motion for leave to amend as part of their response to the Court's Order to Show Cause. (*See generally* Proposed Amended Compl.) Plaintiffs' Proposed Amended Complaint additionally alleges that Defendant Gerard Glass, Esq., was acting "in his capacity of Village of Babylon N.Y. prosecutor and attorney" in aiding Steven Paloubis and Christopher Paloubis but does not offer any facts in support of this statement. (*Id.* ¶¶ 41-42, 68.) The Proposed Amended Complaint further alleges that Palmieri "overheard the police, the Paloubis, and Glass co-defendants" making several allegedly racist statements about how "getting rid of the Coalition" would allow them to "eat their pizza together" in the village without minorities present. (*Id.* ¶ 69.) Plaintiffs' Proposed Amended Complaint further attempts to clarify that state claims previously brought in state court against the Paloubis Defendants and Gerard Glass, Esq., "did not include the Constitutional violations under 1983 or 1985, 1988 etc." (*Id.* ¶ 89.) Plaintiffs' Proposed Amended Complaint also includes

numerous conclusory statements without supporting facts that all Defendants colluded and conspired together, and that the private actor Defendants were state actors. (*See, e.g., id.* ¶¶ 42, 43, 50.)

## II.  Procedural Background

Plaintiffs initially filed the instant action on May 4, 2024, but did not begin to serve the Defendants until mid-July 2024. (*See* ECF No. 16, Summons Returned Executed.)  Subsequently, the Glass Defendants appeared on July 25, 2024, and requested a pre-motion conference in anticipation of filing a motion to dismiss, and the Paloubis Defendants similarly appeared and requested a pre-motion conference on July 26, 2024.  (ECF Nos. 10, 13.)  The undersigned was subsequently assigned to the case on July 29, 2024, as Magistrate Judge Dunst had previously been presiding over the matter.  As discussed *supra*, the Court issued an Order to Show Cause on July 29, 2024, and also granted the pending requests by the Glass and Paloubis Defendants for pre-motion conferences. Counsel appeared on behalf of the Suffolk County Defendants, including the Police Officer Defendants, on July 30, 2024, and requested a pre-motion conference on August 3, 2024, also in anticipation of filing a motion to dismiss, which the Court granted and scheduled for the same date as the previous Defendants' pre-motion conference.  (ECF Nos. 16, 17.)  Plaintiffs responded to

the pre-motion conference requests and the Order to Show Cause on August 23, 2024, as discussed *supra*.

The combined pre-motion conference and show cause hearing was held on September 6, 2024. At the conference, Plaintiffs' counsel made several concessions regarding the infirmities in the complaint.[2] Plaintiffs' counsel agreed that there were no facts alleged in the complaint to suggest that the parties in the instant action are diverse, and therefore he conceded that diversity jurisdiction did not exist. Regarding the Glass Defendants, Plaintiffs' counsel conceded that no alleged facts suggest that the Glass Defendants had any role in the alleged constitutional violations, notwithstanding Gerard Glass's occasional role as a town attorney. Plaintiffs' counsel also agreed that the Glass Defendants are not state actors and that Plaintiffs' negligence claims against the Glass Defendants were barred by *res judicata* and collateral estoppel. Accordingly, Plaintiffs' counsel agreed to dismiss the claims against the Glass Defendants in the original complaint.

Next, regarding the Paloubis Defendants, Plaintiffs' counsel agreed to dismiss the federal claims against the Paloubis

---

[2] As noted in the Court's Minute Entry summarizing the conference, Plaintiffs' counsel of record, Judith N. Berger, Esq., did not appear, an absence that was both unexplained and unexcused. (*See* Minute Entry dated September 6, 2024.) Instead, Anthony M. Vassallo, Esq., entered a notice of appearance on behalf of Plaintiffs and appeared at the conference, explaining that he was of counsel to Ms. Berger. Mr. Vassallo represented to the court that he was familiar with the procedural and factual background of the case and was prepared to proceed with the conference.

Defendants because they were not state actors.  Finally, regarding the Suffolk County Defendants, Plaintiffs' counsel conceded that the Suffolk County Police Department was not a proper party, and that Suffolk County itself was the correct defendant, and agreed to dismiss the Suffolk County Police Department as a Defendant. Plaintiffs' counsel also conceded that no county policy or practice that violated Plaintiffs' constitutional rights was alleged in the complaint, and that, therefore, a viable *Monell* claim did not exist against Suffolk County itself, which he also agreed to dismiss as a defendant.  Finally, Plaintiffs' counsel agreed that, based on *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) and *Barrett v. Harwood*, 189 F.3d 297 (2d Cir. 1999), there were no allegations stating a viable claim against the individual police officers based on the self-help eviction of Plaintiffs' office space, and the officers' mere presence during the eviction to prevent a breach of the peace.  Accordingly, Plaintiffs' counsel agreed that there were no viable claims to sustain the complaint.

Based on the concessions made by Plaintiffs' counsel, the Court concluded that no federal claims over which this Court has jurisdiction remained in the original complaint, declined to exercise supplemental jurisdiction over any remaining state law claims, and dismissed the complaint.  The Court also ruled that although leave to amend should freely be granted, the Proposed Amended Complaint filed previously by Plaintiffs' counsel did not

correct the deficiencies discussed at the conference, and thus granting leave to amend would be futile, and the amendment was denied.

## LEGAL STANDARD

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.  *Id.*, *see also* Fed. R. Civ. P. 12(h)(3). Furthermore, "[a] district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Grant v. County of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)). "Additionally, even if a plaintiff has paid the filing fee, a district court may dismiss the case, *sua sponte*, if it determines that the action is frivolous." *Chapman v. United States Dep't of Just.*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) (citing *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000).  An action is frivolous as a matter of law when, *inter alia*, it is "based on an indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law . . .,

or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 473 (2d Cir. 1998) (citations omitted).

## I.   Subject Matter Jurisdiction

Federal court jurisdiction exists only when a "federal question" is presented, or when there is "diversity of citizenship" between the plaintiffs and defendants and the amount in controversy exceeds $75,000.00.   28 U.S.C. §§ 1331, 1332.   Subject matter jurisdiction based on 28 U.S.C. § 1332 "requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014).

A case may also be filed in federal court pursuant to 28 U.S.C. § 1331 "'when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).   A well-pleaded complaint may raise a federal question either by (1) asserting a federal cause of action, or (2) presenting state claims that "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d

187, 194 (2d Cir. 2005) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

## II. **Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

## III. **Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the

14

court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks and citation omitted).

Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).  The touchstone for determining futility is whether the proposed amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b).  *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 389 (2d Cir. 2015).

## DISCUSSION

Plaintiffs argued in their response to the Order to Show Cause that the Court should not dismiss the complaints against the private actor Defendants because (1) Gerard Glass also serves as a village attorney; and (2) the remaining private actor Defendants "became state actors" when they "conspired" and "colluded" with the police officer Defendants.  (Pl. Resp. 4-10.)  Plaintiffs did not address the Court's Order to Show Cause regarding Suffolk County and the Suffolk County Police Department directly, but their

15

amended complaint included several paragraphs devoted to a 2014 Settlement Agreement with the United States Department of Justice regarding practices of the Suffolk County Police Department. (Proposed Amended Compl. ¶¶ 103-05.) Subsequent to their response to the Order to Show Cause, Plaintiffs' counsel made several concessions at the September 6, 2024, conference, ultimately acknowledging that the Complaint did not set forth any viable federal causes of action.

The Court finds that diversity jurisdiction is not present in the instant action, as all parties are citizens of New York. The Court further finds that Plaintiffs' complaint fails to allege any facts suggesting any state action that deprived Plaintiffs of their Constitutional rights. In the absence of diversity jurisdiction, the Court lacks original jurisdiction over Plaintiffs' state law claims, and in the absence of federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Based on these findings, the Court accordingly dismisses Plaintiffs' complaint in its entirety. Moreover, because the Plaintiffs' Proposed Amended Complaint fails to cure the aforementioned deficiencies, the Court finds that amendment would be futile, and declines to grant leave to amend.

## I.  Diversity Jurisdiction

Although the Complaint alleges that this Court may exercise diversity jurisdiction over this matter "as the amount of the

controversy exceeds $75,000," Plaintiffs ignore the central requirement of the statute – diversity of citizenship between the parties.   (Compl. ¶ 24.)   "Federal courts only have diversity jurisdiction when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants." *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 670 (E.D.N.Y. 2017) (citing 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)).   "This means that if any plaintiff is a citizen of the same state as any defendant, complete diversity does not exist, and diversity jurisdiction is lacking." *Id.*

Here, both Plaintiffs are citizens of New York, and *every* Defendant is also a citizen of New York.   (*See* Compl. ¶¶ 1-12.) As such, even minimal diversity between the parties is lacking, let alone complete diversity.   In the absence of complete diversity, this Court is unable to exercise diversity jurisdiction over this dispute. *See Pa. Pub. Sch. Emps' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014) ("Subject matter jurisdiction based on 28 U.S.C. § 1332 . . . . requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants.").   Therefore, the only other basis for this Court to assert jurisdiction over the instant case would be the presence of a claim "arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   Accordingly,

the Court will proceed to examine the viability of Plaintiffs' claims that are alleged to arise under 42 U.S.C. § 1983.

## II.  State Actor for Purposes of 42 U.S.C. § 1983

Although it is not clearly specified, Plaintiffs' first, second, third, and fifth causes of action against appear to arise under 42 U.S.C. § 1983, and allege violations of Plaintiffs' First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights.  (Compl. ¶¶ 13, 25, 77-106, 111-26.)

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  Plaintiffs make no allegations that the Paloubis Defendants are state actors.  Rather, in the original Complaint, Plaintiffs alleges that the Paloubis Defendants were "aided and abetted by [the Police Officer Defendants]." (Compl. ¶ 40.)  Subsequently, in the Proposed Amended Complaint, Plaintiff

alleged in conclusory fashion and without specific facts that the Paloubis Defendants acted under color of state law by conspiring with the Suffolk County police officers. (Proposed Amended Compl. ¶ 43.) Plaintiffs' negligible and deficient conspiracy allegations are as follows:

> By the individual Co-Defendants self-executing and enforcing a warrant of the District Court as was told to Officer Zanelli on May 3, 2021, May 4, 2021, all the Co-Defendants became state actors with the police to enforce a state act on May 5th and 6th with the aid, encouragement, colluding, conspiring with the police.

(*Id.*) Plaintiffs' conclusory allegations that the enforcement of a District Court warrant by private actors in the presence of police officers who were present to ensure peace and order, neither transforms the private actors into state actors, nor states an adequate conspiracy claim. *See, e.g., Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004) ("'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983)).

Here, the crux of Plaintiffs' claims is that the Paloubis Defendants, who had sought legal counsel from the Glass Defendants,

19

were undertaking an illegal self-help eviction, and the Police Officer Defendants were present but took no action to intervene or prevent the eviction from taking place.  The Supreme Court has held that a state actor's mere inaction or acquiescence in private allegedly wrongful conduct does not convert that private conduct into state action.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–66 (1978) (stating that "a State is responsible for the . . . act of a private party when the State, by its law, has compelled the act" and that the Supreme Court "has never held that a State's mere acquiescence in a private action converts that action into that of the State").

The conduct of the police officers in the instant case is analogous to the circumstances considered by the Second Circuit in *Barrett v. Harwood*, 189 F.3d 297, 303 (2d Cir. 1999).  In that case, a private individual engaged another private actor to assist with the repossession of a truck owned by the plaintiffs.  *Id.* at 299.  The private actors, both of whom were named as defendants, took steps to prepare for the repossession by contacting the Village Police Department to "request that a police officer be dispatched to the scene where [the private actor] planned to repossess the vehicle." *Id.*  A police officer was subsequently ordered to the scene in anticipation of a breach of the peace. *Id.*  The plaintiff subsequently arrived at the scene and asked what was going on, and the police officer informed him that the

individual was repossessing his truck. *Id.* The plaintiff objected and his wife brought documents purportedly showing ownership of the truck, but the police officer informed the plaintiff and his wife that the incident was "a civil matter" in which the police could not get involved. *Id.* Plaintiff subsequently struck the defendant that was effectuating the repossession, and the police officer warned Plaintiff that "If you start any trouble here, you'll be going in the back seat of my car. Do you understand me, mister?" *Id.* Plaintiff then handed the keys to the truck to the individual repossessing it, stating he did so due to the "officer's threat of arrest." *Id.* at 300.

The Second Circuit found, as the district court previously had, that the police officer's "actions amounted to no more than the carrying out of his duty to prevent violence in the event of a breach of the peace and that there was no state action to facilitate the repossession." *Id.* at 303. The Court finds the situation in *Barrett* to be closely analogous to the instant case.

As in *Barrett*, the police officers at the scene of the eviction explained to Palmieri that the self-help eviction of his office space was a civil matter in which they would not get involved. (Proposed Amended Compl. ¶ 59.) The police officers did not allow Palmieri to enter the premises while the eviction was ongoing, similar to the conduct of the police officer in *Barrett* who sought to prevent a physical confrontation between the

individual repossessing the truck and the plaintiff in that case. (*Id.* ¶ 60.)  When Palmieri asked to retrieve his mail, and asked for a document from the office, the police officers on the scene coordinated with Steven and Christopher Paloubis to allow Palmieri to retrieve the documents without incident.  (*Id.* ¶¶ 65-66.) Plaintiff alleges that the police officers told him "that he was not free to go" and leave the scene, but such an action would in no way facilitate the ongoing eviction by the private actors.[3] (*Id.* ¶¶ 67-68.)

Plaintiff alleges that Defendant Glass used "his status and position as the Village of Babylon and Village of Lindhurst attorney and prosecutor" to "keep [Palmieri] detained" and convince the police officers to "reverse their decision to treat the eviction as a crime," but these conclusory allegations, which are not supported by any factual statements as to what was actually said or done by Defendant Glass, do not convert Glass's acts as an attorney for the Paloubis landlords during the self-help eviction into state action.  (*Id.* ¶ 68.)

In conclusion, the Court finds that the police officers' presence at the eviction did not convert the non-State Defendants'

---

[3] The Court also notes that Plaintiffs' pleadings are inconsistent with one another, as the original Complaint alleges that Officer Zanelli told Plaintiff Palmieri he "was free to go" but told him to "wait" while the police spoke to the Paloubis Defendants and Gerard Glass, Esq.  (Compl. ¶¶ 60-61.)  The Amended Complaint changes Palmieri's allegations regarding this interaction to instead allege Officer Zanelli told Plaintiff Palmieri that "he was not free to go." (Proposed Amended Compl. ¶¶ 67-68.)

acts from a private self-help eviction into state action. Accordingly, the non-State Defendants cannot be considered state actors for purposes of 42 U.S.C. § 1983. In the absence of Plaintiffs' 42 U.S.C. § 1983 claims against the non-State Defendants, the Court declines to exercise supplemental jurisdiction over any of Plaintiffs' state law claims against the non-State Defendants.

### III. Supplemental Jurisdiction

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Weighing the values of judicial economy, convenience, fairness, and comity, the Court finds no reason to exercise supplemental jurisdiction over Plaintiffs' remaining claims against the non-State Defendants, which are dismissed without prejudice to their being refiled in state court. This matter is in its nascent stage, and no party alleges that New York state courts in Suffolk County would be unable to adjudicate a matter which is, at its heart, an allegedly unlawful eviction

23

case.   Accordingly, Plaintiffs' state law claims against the private actor Defendants,[4] specifically Steven Paloubis, Christopher Paloubis, Gerard Glass, Esq., and Gerard Glass and Associates, P.C., are dismissed without prejudice to their being refiled in state court.

## IV.   Claims against Suffolk County and the Suffolk County Police Department

In the Order to Show Cause dated July 29, 2024, this Court noted that "[i]t is well settled that an entity such as the Suffolk County Police Department is an 'administrative arm' of the same municipal entity as Suffolk County and thus lacks the capacity to be sued" and "[m]unicipal governments, like Suffolk County, may be sued only for unconstitutional or illegal policies, not for the illegal acts of their employees." *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) (citations omitted).

Plaintiffs did not respond to this specific aspect of the Show Cause order that the Suffolk County Police Department lacks the capacity to be sued, nor did Plaintiffs offer any case law to the contrary.  Because the Suffolk County Police Department does not have a legal identity separate and apart from Suffolk County,

---

[4] The Court notes that Plaintiffs' counsel conceded at the September 6, 2024, Conference that the state law claims against the Glass Defendants were barred by *res judicata* or collateral estoppel, but in the absence of the underlying state court decision, the Court is unable to determine whether those claims are, in fact, barred by either doctrine and therefore subject to dismissal with prejudice.  Rather than retaining supplemental jurisdiction to make such a determination, the Court instead dismisses Plaintiffs' claims against the Glass Defendants without prejudice, confident that New York state courts will be able to appropriately apply either doctrine if appropriate.

the Court dismisses the Suffolk County Police Department as a defendant in this case.  *See Razzano v. County of Nassau*, 599 F. Supp. 2d 345, 351 (E.D.N.Y. 2009) ("under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued" (quoting *Davis v. Lynbrook Police Dept.*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002))).

Plaintiffs likewise did not offer any arguments in their Show Cause response explaining what municipal policy or custom was implicated by the Complaint or offer any facts that would state a *Monell* claim against Suffolk County.  Plaintiffs' Proposed Amended Complaint includes several pages discussing and quoting a 1986 Consent Decree and 2014 Settlement Agreement between the United States Department of Justice and the Suffolk County Police Department, but does not offer any facts suggesting that a municipal policy in effect at the time of the events giving rise to this action caused the injuries Plaintiffs allegedly suffered. (Proposed Amended Compl. ¶¶ 103-05.)

To state a *Monell* claim for municipal liability, a plaintiff must first demonstrate "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).  And, "[s]econd, the plaintiff must establish a causal

25

connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Id.* (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985)). A searching review of the Complaint, the Proposed Amended Complaint, and Plaintiffs' response to the Orde to Show Cause reveals no facts alleging the existence of an official municipal policy or custom that resulted in the deprivation of Plaintiffs' constitutional rights.[5] Plaintiffs' references to a nearly thirty-year-old Consent Decree and a ten-year-old settlement between the Department of Justice and the Suffolk County Police Department, which are not connected with any alleged facts to the officers' conduct during the self-help eviction, fail to state a claim. (Proposed Amended Compl. ¶¶ 103-05.)

Ultimately, Plaintiff has offered no facts regarding any official municipal policy, either as a formally promulgated policy or as a pattern or practice, that is relevant to the Police Officers Defendants' conduct during the self-help eviction. As a result, Plaintiffs' claims against Suffolk County are dismissed with prejudice for failure to state a claim. *See Montero v. City of Yonkers, New York*, 890 F.3d 386, 403-04 (2d Cir. 2018) ("[t]he mere assertion . . . that a municipality has [] a custom or policy is insufficient in the absence of allegations of fact tending to

---

[5] Plaintiffs' counsel conceded that the necessary factual allegations were lacking at the September 6, 2024, conference. (*See* Minute Entry dated September 6, 2024.)

support, at least circumstantially, such an inference" (internal quotation marks and citation omitted)).  The Court declines to exercise supplemental jurisdiction over any remaining state law claims against Suffolk County, which are dismissed without prejudice, for the reasons set forth in Discussion Section III, *supra*.

**V.    Claims against the Police Officer Defendants**

With respect to the Police Officer Defendants, because the Court has concluded, in Discussion Section II, that the self-help eviction conducted by the non-State Defendants could not be considered state action to support a federal constitutional claim, Plaintiffs' claims against the individual police officers also fail and are dismissed.  *See Flagg Bros. v. Brooks*, 436 U.S. 149, 164 (1978) (stating that the Supreme Court "has never held that a State's mere acquiescence in a private action converts that action into that of the State").  Plaintiffs allege no facts suggesting the Police Officer Defendants engaged in any independent conduct, beyond being present to preserve peace and order during the self-help eviction, that could serve as the basis for a 42 U.S.C. § 1983 claim.  Instead, the facts alleged in both the Complaint and the Proposed Amended Complaint show that the Police Officer Defendants' actions "amounted to no more than the carrying out of [their] duty to prevent violence in the event of a breach of the peace and that there was no state action to facilitate the

27

[eviction]." *Barrett v. Harwood*, 189 F.3d 297, 303 (2d Cir. 1999). As a result, there was no state action that deprived Plaintiffs of any constitutional right, and therefore no constitutional violation.[6]

Furthermore, to the extent Palmieri claims that he was seized when Officer Zanelli instructed him not to enter the property at 28 East Main Street while the Paloubis Defendants undertook the self-help eviction, (Proposed Amended Compl. ¶¶ 60, 67), the Court finds that Officer Zanelli would be shielded from liability by qualified immunity.

"Qualified immunity shields government officials from claims for money damages unless a plaintiff adduces facts showing that '(1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct.'" *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[A] court that decides this second question in a defendant's favor may award qualified immunity without conclusively answering the first." *Id.*

For the law to be clearly established, "the law must be so clearly established with respect to the 'particular conduct' and the 'specific context' at issue that 'every reasonable official

---

[6] The Court notes that Plaintiffs' counsel conceded this point at the September 6, 2024, conference and Show Cause hearing. (*See* Minute Entry dated September 6, 2024.)

would have understood' that his conduct was unlawful." *Id.* at 68-69 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "In short, if at least some reasonable officers in the defendant's position could have believed that the challenged conduct was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Id.* at 69 (internal quotation marks and citation omitted). "Even if an officer is mistaken . . . the officer will not be held liable if he acted reasonably and in good faith." *Washpon v. Parr*, 561 F. Supp. 2d 394, 403 (S.D.N.Y. 2008) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

The facts alleged in the Complaint and Proposed Amended Complaint show that Officer Zanelli did not allow Palmieri to enter the property at 28 East Main Street while the Paloubis Defendants were executing the eviction, but did allow Palmieri to check a mailbox for which Palmieri had a key, and facilitated the retrieval of other mail inside the property with the Paloubis Defendants. (Proposed Amended Compl. ¶¶ 65-66.) Plaintiffs admit in the Proposed Amended Complaint that the Paloubis Defendants did, in fact, have a warrant of eviction from a landlord-tenant action. (*Id.* ¶ 68.)

Furthermore, under New York law, a commercial landlord "may, under certain circumstances, utilize self-help to regain possession of demised commercial premises." *Sol De Ibiza, LLC v.*

*Panjo Realty, Inc.*, 911 N.Y.S.2d 567, 569 (1st Dep't 2010). Consequently, it was not unreasonable for Officer Zanelli to prevent Palmieri from entering the premises, especially given the possibility that Palmieri might have attempted to resist the eviction, causing a breach of the peace.  Plaintiffs identify no constitutional right to enter and be present during a court-ordered eviction of commercial property.  The Supreme Court has stated that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Court finds no evidence that Officer Zanelli's conduct in preventing Plaintiff from entering 28 East Main Street during the eviction fits into either category, and it is therefore protected by qualified immunity.

Accordingly, Plaintiffs' federal claims against the Police Officer Defendants are dismissed with prejudice for failure to state a claim, and the Court declines to exercise supplemental jurisdiction over any remaining state law claims asserted against the Police Officer Defendants, for the reasons set forth in Discussion Section III, *supra*.

Finally, the John/Jane Doe Defendants, who are mentioned in the caption but about whom no facts are alleged, are dismissed because Plaintiffs have failed to state a claim against the unnamed defendants.

30

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint is dismissed in its entirety. The non-State Defendants do not constitute state actors for purposes of 42 U.S.C. § 1983, and thus Plaintiffs' § 1983 claims against the non-State Defendants are dismissed with prejudice. The Suffolk County Police Department is dismissed as a defendant because it lacks a legal identity separate and apart from Suffolk County. The claims against Suffolk County brought under federal law are dismissed because Plaintiffs have failed to establish that a county policy was implicated and caused a constitutional violation. The claims against the Police Officer Defendants arising under federal law are dismissed for failure to state a claim. The Court declines to exercise supplemental jurisdiction over Plaintiffs' surviving state law claims against all Defendants, which are dismissed without prejudice to being refiled in state court.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated:     September 13, 2024
           Brooklyn, New York

_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

31